IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | | |
|---|---|---|
| **Adam Slen,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 1:09-cv-607 (TSE-TRJ) |
| | ) | |
| **Michael J. Astrue,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### *REPORT AND RECOMMENDATION*

Plaintiff Adam Slen seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (hereinafter "Commissioner") denying his claim for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI). The ALJ denied Mr. Slen's

claims because, while he determined that Mr. Slen was under a disability, he also found that

substance abuse was a contributing factor material to that disability and that plaintiff's conduct

therefore precluded him from receiving benefits.

Both parties have moved for summary judgment, and this case was referred to the

undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and

recommendation. For the reasons stated below, the magistrate judge finds that the decision of the

Administrative Law Judge is not supported by substantial evidence and that the applicable law

was not correctly applied. Accordingly, the magistrate judge recommends that plaintiff's motion

for summary judgment be granted, and defendant's motion for summary judgment be denied.

1

## PROCEDURAL HISTORY

Mr. Slen filed applications for SSI and DIB on October 15 and October 30, 2003, respectively, claiming that he became unable to work on October 15, 2002. (Adm. Rec. 45-47). Following denials at the initial, reconsideration and appeals levels, the ALJ rejected Mr. Slen's claim on September 20, 2005. (Adm. Rec. 330-40). Specifically, the ALJ found that Mr. Slen retained the ability to perform light, unskilled work with a sit/stand option and limited public contact. Id. (From the record, it appears that substance abuse was not an issue during these proceedings.) Denied by the Appeals Council in his request for review on January 13, 2006, Mr. Slen filed a civil action in this court on February 27, 2006. See Slen v. Barnhart, 1:06 cv 221, Docket No. 1.

But before submission of cross motions for summary judgment, the Commissioner requested and received a voluntary remand of the case to reconsider the administrative findings, pursuant to sentence six of 42 U.S.C. § 405(g).[1] Id. Docket Nos. 16, 17. The Appeals Council remanded the case to the same ALJ, providing him with instructions to correct the following deficiencies in his denial decision. According to the Appeals Council, the denial improperly lacked the requisite "function-by-function assessment of the claimant's ability to perform work-related activities"; failed to "adequately address the opinion evidence"; and failed to "explain how the claimant's activities conflict with the opinion evidence" and to "explain the weight

---

[1] Unlike a "sentence four remand", a "sentence six remand" returns the case without a decision affirming, modifying or reversing an administrative decision. Camano v. Astrue, No. 3:09cv199, 2010 WL 629844, at *7 (E.D. Va. Feb. 19, 2010); see also Longey v. Sullivan, 812 F.Supp. 453 (D. Vt. 1993).

given the opinions." (Adm. Rec. 342).

The ALJ held a second hearing on April 24, 2007 and subsequently issued a second denial decision. (Adm. Rec. 293-300).  Two years later and without comment, the Appeals Council issued a form denial decision.  (Adm. Rec. 288-90).  This civil action followed.

*FACTS*

The following is a summary of the Administrative Record.  The facts contained in it are largely limited to those that directly bear on the (narrow) dispositive legal issues that are presented by this review.

## A.  *Plaintiff's Medical History*

Pervasive developmental disorder[2], attention deficit hyperactivity disorder, obsessive compulsive disorder, complex partial seizure disorder, Tourette's syndrome, and borderline mental functions are among Adam Slen's diagnoses. (Adm. Rec. 175, 364).  He has suffered from these conditions to varying degrees since childhood.

Now twenty-seven years old, Mr. Slen was first diagnosed as impaired in non-verbal learning and in his inability to relate to peers at age two. (Adm. Rec. 185).  Held back in kindergarten and placed in a program for emotionally disturbed children in elementary school, Mr. Slen suffered from behavioral problems throughout his junior high years. (Adm. Rec. 56).

The record discloses no fewer than seven psychiatrists, neurologists, psychologists, and neuropsychologists who have all at some point treated Mr. Slen.  (Adm. Rec. passim). The first,

---

[2] Pervasive developmental disorders – including autism and Asperger's syndrome – are characterized by pervasive and severe disability in vital areas of development; viz., communication and social skills. They are often associated with some degree of mental retardation. Diagnostic and Statistical Manual of Mental Disorders 65-66 (American Psychiatric Association, 4th ed. 1994).

Martin Stein M.D., began seeing him in March 1994. (Adm. Rec. 98). Dr. Stein attributed Mr.

Slen's unsuccessful stint as a sales clerk at Hechts department store to an "organic brain disease,"

which he had documented by his own clinical examinations over many years. (Adm. Rec. 186).

In this assessment, Dr. Stein also relied on the results of neuropsychological testing completed by

Victoria Starbuck, Ph.D., whose evaluations put Mr. Slen in the moderately mentally retarded

range. Id.

Thomas Hyde, M.D., Ph.D., began evaluating Mr. Slen in January 2006. The documents

in the record relating to Dr. Hyde reveal a number of disabilities and disorders. First, Dr. Hyde

noted with concern Mr. Slen's history of "multiple neuropsychiatric problems," learning

disabilities, behavioral problems, and emotional disabilities. (Adm. Rec. 380-81). Second, one

of Dr. Hyde's elemental neurological examinations demonstrated "slow and clumsy fine motor

movements in the hands, with synkinectic movements of the contralateral hand, a postural arm

and hand tremor and foot tremor, vocal tics, and several frontal release signs." (Adm. Rec. 383).

Importantly, from these indications Dr. Hyde diagnosed Mr. Slen with a developmental

dysfunction of the central nervous system – a condition that would predispose Mr. Slen to

lifetime learning disabilities and psychiatric disturbances. (Adm. Rec. 383).

Third, on March 10, 2007, Dr. Hyde completed a detailed assessment encompassing all of

plaintiff's conditions. (Adm. Rec. 364-65). This evaluation endeavors to demonstrate that Mr.

Slen's conditions meet the criteria set out in Section 12.02 in defendant's Listing of Impairments,

which translates into a presumptive finding of disability. See 20 CFR Pt. 404, Subpt. P, App.1.

Concluded Dr. Hyde: "At best, the patient, due to psychiatric problems, learning disabilities, fine

motor problems, and medication side effects, can work part time doing menial tasks in a

sheltered, non-stressful, supportive environment." (Adm. Rec. 368).

Finally, and of special importance to the legal analysis infra, Dr. Hyde noted on March 11, 2007 that Mr. Slen's disability was not causally linked in any way to substance abuse. (Adm. Rec. 370). In fact, Dr. Hyde's reference to the claimant's use of alcohol is altogether confined to his analysis of one incident in which Mr. Slen made an alcohol-induced explosive outburst while on a trip to see his mother in Ft. Wayne, Indiana. (Adm. Rec. 376). In view of this incident, Dr. Hyde noted that Mr. Slen had "alcohol dependence in remission." (Adm. Rec. 364). Separately, on February 12, 2007, the doctor registered concern for Mr. Slen's elevated liver function tests. Yet these results were not ascribed to the abuse of alcohol. Instead, the doctor surmised that doxycycline, one of Mr. Slen's many medications, might have been the culprit. (Adm. Rec. 372).

In Mr. Slen's second hearing on April 24, 2007, the ALJ called a vocational expert to testify as to plaintiff's ability to perform jobs that exist in significant numbers in the national economy. (Adm. Rec. 395-98). That expert was asked only two questions. The first was whether there were jobs that could be performed by a person who can perform unskilled, sedentary work with a sit/stand option and limited general public contact. Understandably, the vocational expert replied that a person with those characteristics could indeed perform a variety of such jobs, some of which he listed. (Adm. Rec. 396).

Mr. Slen's representative then asked the expert whether there are jobs that could be performed by a person with the limitations that were diagnosed by a number of the claimant's psychologists and psychiatrists and that are explained supra. The expert's conclusion was that the conditions diagnosed by Mr. Slen's physicians would reduce productivity to a level below that which employers would deem acceptable. (Adm. Rec. 398).

### B.    Plaintiff's Work History

Owing to his poor judgment and inability to learn, Mr. Slen has a brief and checkered work history. His first job, as a sales clerk at Hechts department store, abruptly ended when he was fired and arrested for marking down clothing for the benefit of some acquaintances. (Adm. Rec. 57, 174, 185, 193). After throwing a case of spaghetti across the office, he was terminated for insubordination from Rite Aid, a job he held only briefly. He then spent a couple of weeks as a cart wrangler at a Harris Teeter grocery store only to be fired when he left work in order to get an autograph. (Mr. Slen has a signature collecting compulsion.) Thereafter, Mr. Slen worked sporadically as a dishwasher at an Arlington restaurant, at Costco from which he was quickly fired, and as a baker's helper at Heidelberg Bakery from which he was terminated due to his inability to learn the mechanics of the job. (Adm. Rec. 81, 173, 188, 276).

At home, Mr. Slen is incapable of completing basic household chores and cannot comprehend how to handle paying bills. In short, his father manages all aspects of his life, including managing Mr. Slen's various medications. (Adm. Rec. 377-91).

### C.    Testimony Before the ALJ

At the second hearing before the ALJ, Mr. Slen was presented with a single question concerning alcohol: "When was the last time you abused alcohol?" (Adm. Rec. 392). He replied that the last time he had <u>used</u> alcohol was nine months prior to the hearing. <u>Id.</u>

Mr. Slen was also unable to articulate what kind of medications he was currently taking. (Adm. Rec. 393).

### D.    The Administrative Law Judge's Decision

To determine "disability" *vel non*, the AJL proceeded through the usual and familiar

analysis; he inquired in sequence: (1) whether plaintiff was currently engaged in substantial gainful activity; (2) if not, whether he had a severe impairment; (3) if so, whether that impairment met or equaled the requirement of a listed impairment; (4) if not, whether the impairment prevented him from performing past relevant work; and, (5) if so, whether the impairment prevented him from doing any other work that currently exists in the economy. See 20 C.F.R. § 416.920.

 If a claimant is found not disabled at any step, further inquiry is obviated. See id. Step four required the ALJ to determine plaintiff's Residual Functional Capacity (hereinafter "RFC"), which quantifies what plaintiff can do despite physical and/or mental limitations. See id. In determining the RFC, the ALJ was required to evaluate all of plaintiff's known impairments. See 20 C.F.R. § 220.120(a).

Mr. Slen bore the burden of production and proof through the first four steps. See Hall v Harris, 658 F.2d 260, 264 (4th Cir. 1981). He could establish a *prima facie* case of disability by meeting the requirements of either step three or step four. Then, the burden shifted to the Commissioner to show that plaintiff was able to perform other work. See id. at 265.

If a claimant is under a disability and there is "medical evidence"of a substance use disorder, there is a further issue: whether that disorder is a so-called "contributing factor material to the determination of disability." If it is, the claimant is deemed not under a disability. See 20 C.F.R. § 404.1535. A substance use disorder is a contributing factor material to the determination of disability if, but for the disorder, the claimant's remaining limitations would not be disabling. 20 C.F.R. § 404.1535(b)(1).

In his findings of fact and conclusions of law, the ALJ first determined that Mr. Slen had

not engaged in substantial gainful activity since October 15, 2002 and thereby satisfied the first step of the process outlined above. (Adm. Rec. 307). Next, he found that Mr. Slen's severe impairments were limited to attention deficit hyperactivity disorder and "substance use disorder." Id. No evidence of a substance use "disorder" was cited by the ALJ.

For the third step, the ALJ determined that plaintiff did not have an impairment of combination of impairments that meets or medically equals one of the listed impairments. Here, the ALJ briefly compares Mr. Slen's symptoms with Listing 12.10 (Autistic Disorder and Other Pervasive Developmental Disorders) but completely omits any mention of Listing 12.02 (Organic Mental Disorders), the very listing on which Dr. Hyde based his diagnosis of significant psychiatric problems. (Adm. Rec. 308).

At this point, the ALJ's conclusions of law become somewhat less than clear. "After careful consideration of the record," the ALJ found that based on all of the impairments, including "the substance abuse disorder," the claimant lacked the residual functional capacity to perform work at any exertional level on a sustained basis. As for the evidence, the ALJ cites the opinions of three physicians (Dr. Leonard Perlman, Dr. Robert Holman and Dr. Hyde), not one of whom ever mentions a "substance abuse disorder" in the record. Dr. Hyde's opinions supporting plaintiff's claim are then deemed to be of "no weight when the effects of the claimant's substance use disorder are not considered." (Adm. Rec. 310). The precise intended import of this conclusion is uncertain, but the suggestion appears to be that Dr. Hyde's diagnosis of developmental dysfunction of the central nervous system improperly failed to take into account a medically unrelated "substance abuse disorder"– a disorder that to this day has yet to be diagnosed by Dr. Hyde or any other physician.

The ALJ then concluded that, given plaintiff's residual functional capacity based on all of the impairments, "including the substance abuse disorder," there were no jobs that existed in significant numbers in the national economy that the claimant can perform.

The following are the ALJ's eleventh and twelfth conclusions of law:

"11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

"12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Adm. Rec. 311).

Even assuming no legal inconsistency between those conclusions, the ALJ omitted a diagnosis-by-diagnosis explanation of why the remaining severe impairments fail to meet or medically equal the listed impairments. Moreover, no evidence is cited for the conclusion that but for the alleged substance abuse disorder, the claimant would remain severely impaired but in a way that does not equal the listed impairments. The magistrate judge is unable to find any in the record.

Finally, the ALJ applied the "material factor" test found in 20 C.F.R. § 404.1535, subsection (a) of which reads: "If we find that you are disabled and have <u>medical evidence</u> of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of your disability" (Emphasis added.) Having cited the standard, the ALJ simply stated that "if the claimant stopped the substance use,

9

the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are low at best when the effects of substance use are not considered." (Adm. Rec. 313). What unrecorded and undiagnosed substance abuse should be stopped is again left unstated and unclear.

## ANALYSIS

### A.    Standard for Summary Judgment

A party is entitled to summary judgment if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, the court must assess the factual evidence and all inferences must be drawn in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### B.    Applicable Standard of Review

In reviewing the decision of the ALJ that was subsequently adopted by the Commissioner, the district court must apply the standard delineated in 42 U.S.C. § 405(g) that "[t]he findings of the [Administrative Law Judge] as to any fact, if supported by substantial evidence, shall be conclusive." It follows that judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 403 U.S. 389, 401 (1971). The plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence. Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). If substantial evidence supports the Commissioner's decision, a reviewing court does not weigh evidence anew or substitute its judgment for that of the Commissioner. Relatedly, if the ALJ's findings are consistent with the evidence presented and if the law was correctly applied, the Commissioner's decision will be upheld. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

## C.    *Findings*

At the outset, the magistrate judge notes that the ALJ's decision denying the claimant benefits is marked by a significant amount of internal inconsistency and confusion. That having been said, the magistrate judge finds a number of errors in those portions of the ALJ's decision that are susceptible of clear interpretation.

Plaintiff frames the essential dispute in this case as being whether the functional limitations that prevent Mr. Slen from working are attributable to "alcoholism" or "drug addiction." This is certainly correct inasmuch as the ALJ made a threshold determination that the claimant lacks the functional capacity to sustain work activity. (Adm. Rec. 309). Only after such a threshold determination of disability is made under the familiar five-step process may the ALJ proceed to the question of whether alcoholism or drug addiction is a material factor to the finding of disability. See 20 C.F.R. § 404.1535 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.") (Emphasis added.) (To the extent that the ALJ did not follow this instruction, thereby mixing the inquiry

into disability under the five-step test with the inquiry into whether alcoholism or drug addiction was a material factor in the claimant's disability, his decision was contrary to law.)

The key to a proper resolution of this issue is located in the first sentence of the regulation in question. There, the regulation plainly states that the material factor determination must be based on "<u>medical evidence</u> of your <u>drug addiction</u> or <u>alcoholism</u>" <u>See</u> 20 C.F.R. § 404.1535 (Emphasis added.) Conspicuously absent from the record is any medical evidence that shows the claimant was diagnosed with a drug addiction or alcoholism. The lone fact in the record that even arguably creates an issue is Dr. Hyde's comment about a single alcohol-induced outburst while Mr. Slen was visiting his mother in Indiana. (Adm. Rec. 376).[3] Yet this is hardly medical evidence of alcoholism, which is a condition that is diagnosed, not an anecdote.

The ALJ's unsubstantiated finding of alcoholism is in sharp contrast to the disability benefits cases in this circuit that have relied on ample medical evidence of alcoholism or drug addiction. <u>See</u>, <u>e.g.</u>, <u>Wright v. Astrue</u>, No. 4:07CV00016, 2008 WL 246360, at *3 (W.D. Va. Jan. 28, 2008) (finding medical evidence of alcoholism where, in view of a "significant history" of cocaine, alcohol, and marijuana abuse, a doctor concluded that the plaintiff's substance abuse was deteriorating his psychological condition); <u>Robinson v. Astrue</u>, No. 5:07-CV-00479-FL, 2008 WL 4790387, at *9 (E.D.N.C. Oct. 23, 2008)(finding medical evidence of alcoholism where a medical expert identified a possible substance-induced mood disorder); <u>Bridgeman v. Astrue</u>, No. 4:07-CV-81-D(3), 2008 WL 1803619, at *4 (E.D.N.C. Apr. 21, 2008) (noting an extensive medical history of polysubstance abuse for at least a decade).

---

[3] There is also one mention of a single episode of smoking marijuana with friends. <u>See</u> Adm. Rec. at 173.

Even if the ALJ had relied on sufficient medical evidence to make a finding of drug addiction or alcoholism, his decision on this score should be negated for a separate error. Subpart two of 20 C.F.R. § 404.1535 states that "if we determine that your remaining limitations would not be disabling [absent alcoholism or drug addiction], we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." In making this determination, the ALJ is instructed to "evaluate <u>which</u> of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." 20 C.F.R. § 404.1535 (Emphasis added.) Without any explanation of how each of the claimant's diagnoses would be impacted in the absence of the "drug addiction" or "alcoholism" and without citing a single expert's opinion, the ALJ concluded that "if the claimant stopped the substance use, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are low at best when the effects of substance use are not considered." (Adm. Rec. 313).

The ALJ cites no evidence in support of this finding, much less substantial evidence. So far from disclosing "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that but for the claimant's alcoholism he would not be disabled, the record demonstrates exactly the opposite. Not one of Mr. Slen's psychiatrists or psychologists suggested that alcoholism or drug addiction played a role in any of his diverse mental health disorders. On the contrary, Dr. Hyde explicitly noted on March 11, 2007 that Mr. Slen's problems were "independent" of any condition related to alcohol or drugs. (Adm. Rec. 370).

It is not an adequate answer to this that the ALJ simply decided to give Dr. Hyde's opinion no weight. (Adm. Rec. 310). That is because if an ALJ is of the view that a treating physician's opinion is not to be given controlling weight, he must then consider the weight to be given to the physician's opinion using five factors: (1) Length of the treatment relationship; (2) Nature and extent of the treatment relationship; (3) The evidence with which the physician supports his opinion; (4) Consistency of the opinion; (5) Whether the physician is a specialist in the area in which he is rendering an opinion. See 20 C.F.R. § 404.1527 (d)(2)(I-ii); (d)(3)-(5). Such an assessment is wholly absent from the decision to accord no weight to Dr. Hyde's opinion. Accordingly, it is contrary to law. But even if the requisite factors had been applied, the ALJ's decision would be reversible for a lack of substantial evidence: Dr. Hyde has been treating the claimant since 2006, is a specialist in neurology and psychiatry, and has access to medical records dating back years.

If the ALJ had followed the injunction in 20 C.F.R. § 404.1535 that he "evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol," he would have done well to look to the nearly four year period from the alleged onset date of October 15, 2002 up to the first evidence of alcohol use in May 2006. That is because the claimant experienced all of his mental and physical disorders within this period despite no evidence of alcoholism or drug addiction.

Completely apart from the faulty material factor inquiry, the ALJ's decision to omit without analysis Mr. Slen's repeated diagnoses of pervasive developmental disorder and its associated conditions from his list of recognized severe impairments was not supported by substantial evidence. (Adm. Rec. 307). Based on the conclusion of one state agency

psychologist, the ALJ found that the plaintiff's brain disorders did not meet the level of severity for presumptive disability under Listing 12.10. This, however, improperly fails to address at all Dr. Hyde's professional opinion that the plaintiff's condition meets the criteria located in <u>Listing 12.02 (Organic Mental Disorders)</u>.

The Commissioner contends that it was proper for the ALJ to ignore or to discount the medical opinions that Mr. Slen has impairments that prevent him from sustaining employment on the grounds that these evaluations are exaggerated and offered with secondary motives, such as sympathy for Mr. Slen. Def.'s Mem. in Supp. of Sum. Judgm., 22. It is a sufficient response to note that the ALJ did not cite secondary motives as a basis for glossing over some of the claimant's medical records; the court can only review the ALJ's stated grounds for a decision. <u>SEC v. Chenery Corporation</u>, 318 U.S. 80, 93-95 (1943). In any event, the Commissioner fails to call the court's attention to any regulation that permits an ALJ to discount an expert's medical opinion based on speculation into the latter's secondary motives.

## **CONCLUSION**

For the reasons stated above, the magistrate judge finds that the decision of the Administrative Law Judge is not supported by substantial evidence and that the applicable law was not correctly applied. On this record, the magistrate judge also finds that another remand is neither necessary nor appropriate. It is time for this dispute to end, and Mr. Slen is entitled to have it end in his favor. Accordingly, the magistrate judge recommends that plaintiff's motion for summary judgment be granted, and defendant's motion for summary judgment be denied.

## **NOTICE**

By means of the court's electronic filing system, and by mailing copies of this report and

recommendation to the parties at their addresses for service of process, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

_____/s/_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

May 12, 2010
Alexandria, Virginia